### BROWN v. ATLANTA & CHARLOTTE A. L. RAILWAY CO.

1. Whether the facts of a case constitute negligence, as defined by the court, is a question for the jury.

2. A railroad company is not liable as a common carrier for cotton, placed by its owner near the track, where it was burned by a spark from a passing engine.

3. As to cotton placed near the line of a railroad, the company is not liable for consequences resulting from its lawful use of locomotives on its track, if proper care and diligence was used.

4. The burning of such cotton by a spark from the engine being proved, the *onus* was upon the company to disprove negligence, and this might be done by showing that they had the most approved mechanical contrivances to prevent the escape of fire, and that the engine was managed with due care and skill on that occasion.

5. The erection by a town council of a platform near to a railroad siding for the storage of cotton, imposed upon the company no other responsibility than such as existed as to their use of the main track.

6. And the use of such platform in part by the railroad company for holding cotton in their custody did not so impose upon them the duty of providing a watchman for the platform, as to render them liable for cotton not receipted for, and there burned without their negligence.

7. The Circuit judge committed no error in charging the jury that "defendant cannot be made liable on a mere probability that the fire was caused by its engines, but only on the preponderance of proof that it was so caused, and on proof of negligence on the part of defendant or its servants—that the probability must amount to proof."

Before HUDSON, J., Spartanburg, March, 1881.

Action by John J. Brown against the Charlotte and Atlanta Air Line Railway Company, commenced in January, 1880. The facts of the case are stated in the opinion. See case of *Wilson & Co.* v. *Railroad Company*, 16 *S. C.* 587. The charge of the presiding judge was as follows:

What is the plaintiff's action? He has brought an action here to recover from the railroad company $750 for cotton which he lost, as he alleges, at the hands of the company. The company is charged in the complaint as a common carrier, and also for damages by reason of negligence, causing the destruction of the property in question, which was not in their charge. So far as their liability as common carriers is concerned, it has not been contended in the argument that the plaintiff has made out his case in that respect; it has not been claimed in the argument that this cotton was in the possession of the railroad company and under its control; that it had been delivered to the company and receipted for. So that the question of their liability as common carriers does not arise in this case. But the burden of the case is that the company negligently destroyed these twelve bales of cotton on the 2d day of November, 1879.

The first question—that which lies at the very foundation of the matter—is whether the company destroyed that cotton or not? Was that cotton destroyed by a spark or sparks from the passing engines? It devolves upon the plaintiff in this action, just as in any other case in the Court of Common Pleas, to make out his case. He cannot ask for a verdict from your hands unless his case is made out, and made out by proof—satisfactory proof and lawful proof.

The first question, that lies at the foundation, is: Was that

cotton burned on that Sunday by sparks from the engines of the company? For, I believe no other probable method of destroying it, so far as the company is concerned, has been noticed in the testimony. It devolves upon the plaintiff to prove that fact—not to raise in your minds a suspicion of the fact; not to lay before you facts and circumstances which raise a mere suspicion—but to prove it by evidence sufficient to convince your minds. If the evidence raises as high a degree of probability that the fire occurred from a cause other than a spark from the engine, then, of course, you could not refer it to the spark from the engine. The fact of the destruction by the company must be proved, and until that is proved you need not go any further. If the evidence on that point is not sufficient to satisfy your minds you can stop there, and the verdict must be for the defendant. That is purely a question of fact, and you are the exclusive judges of the testimony.

Testimony has been introduced by the plaintiff tending to show that the sparks from the engine fired that cotton. I cannot remember the names of all the witnesses, and it would be of no service for you to hear from my notes of the testimony what the witnesses have said. The counsel on both sides have fully commented upon the testimony. The plaintiff's testimony is, in effect, that on November 2d, 1879, at Gaffney City, the trains drawn by engines No. 2 and No. 3, going east and west, passed each other, as they had been doing for a long time; they had been doing so before the platform was erected by the town council, and, I believe, since June previous, the same year; the platform having been erected in July. So that there was nothing unusual in the trains meeting and passing there that day; that was according to the company's regular schedule, and according to the regular course of business.

But, it is said that the engine No. 2, having arrived with its train, from which the passengers were put off as usual, went in on the siding and came nearer that cotton than usual; that it came in dangerous proximity to the cotton without sufficient cause for so doing; and that whilst in such dangerous proximity to the cotton, the spark or sparks from the engine set the cotton on fire, which fire was not discovered until after trains had departed, but was

discovered a very short time thereafter. That, gentlemen, is the circumstantial evidence as to the fact, on the part of the plaintiff. You have heard the different witnesses for the plaintiff state the different lengths of time after the trains passed when the fire was discovered—some putting it five or six minutes—the interval varying with the different witnesses; but all the witnesses for the plaintiff making it a short time afterwards that the fire was discovered.

If that testimony stood alone you would be left to inference as to whether the sparks from the engine fired the cotton or not, and that inference is for you to draw, and not for me. But the testimony for the defendant puts a very different phase upon the matter, so far as the time is concerned when the fire was discovered. You have heard the very substantial testimony of that witness who was in the buggy (Mr. Latham, I believe,) and other witnesses; and, according to their testimony, the fire was not discovered until after twenty-five or thirty minutes after the train had gone. It is in proof that it was a clear day, in a very dry time; that the cotton was very dry; and the position is taken by the plaintiff, that whatever fired the cotton, very soon after it was fired it must have been discovered; in other words, that the fire must have originated but a very short time before discovery, on account of the dry and windy state of the weather. You, gentlemen, have a knowledge of the nature of cotton, and the manner in which it is packed away. Sparks will slumber a long time, or a short time; but the position taken by the plaintiff is that it must have been quite a short time before discovery that the fire was set.

In addition to the testimony for the defendant as to the difference in time, you have the further testimony, that upon this very cotton, whilst the train was there, and as the train came up, the platform was occupied by a number of persons, mostly colored, and that some of them were on the cotton itself, and were smoking. Such is the testimony of the conductor who brought up this train; such, also, I believe, is the testimony of the engineer. And then you have the testimony of other persons, who, after the train had passed and the crowd had dispersed and gone to their respective homes and places for dinner, were coming from

church, and when crossing the railroad at that point observed these negro lads upon the cotton, some of whom were then smoking. No fire was seen, and they passed on to their homes. The credibility of these witnesses is altogether for you.

You see that there is a conflict of testimony, and you must ask yourselves, gentlemen, whether it is not perfectly natural that there should be a conflict of testimony, so far as time is concerned, and so far as different individuals might notice different things. Perhaps some of you have been about railroad depots when trains arrive; perhaps you know something about the habit of communities on such occasions. The evidence here shows that many people had congregated about the depot upon the arrival and departure of trains. What is that for, and to what is the attention of those people usually directed? Did they gather to notice bales of cotton on a platform, or to see who comes and who goes, who get off the trains and who get on? Is their attention more likely to be attracted to the crowd in and about the cars, or to persons on a cotton platform some distance off? When the crowd has dispersed and people come along by such a place, would they be likely to observe parties upon a platform and upon cotton, who were, perhaps, the only persons about there? Could they be mistaken as to the fact? What would attract their attention when the trains had gone, and the crowd had dispersed? If any persons were on the cotton bales, would they not have seen them? These are questions you must put to yourselves in trying to reconcile the testimony of different parties. On such occasions and around such a place, are not persons liable to have their attention directed one to one thing, and one to another? Are all liable to notice the same thing? And when afterwards called upon to speak about what they saw there, is it not like human nature that each one should speak about that to which his attention was attracted? So that, taking into consideration the surrounding circumstances, it may be that we can reconcile all these witnesses, and that each spoke conscientiously, and told the truth so far as he knew and was able.

Then, after the departure of trains at such a place, and the bystanders have dispersed to their dinners, what capability have

they of judging correctly as to time? Does time fly rapidly, or slowly? Are they observing closely, with minds clear? Is lapse of time likely to appear very short, or very long, on such an occasion? Is a person, who leaves a crowd at a train, goes to dinner, and an alarming or exciting event occurs afterward, likely to think the time elapsed shorter, or longer than it has been? All these matters you must ask yourselves.

When you take all that testimony into consideration, it is for you to say, from the whole of it, whether the facts proved satisfy your minds. There may be a preponderance of evidence, and yet that preponderance might not amount to satisfaction. But you are to judge of this by the preponderance of testimony. Does the great preponderance of testimony satisfy your minds that sparks from the engine fired that cotton, or that it was fired by a spark or coal, or a bit of burning tobacco from a pipe? To which, now, as twelve men in honest search of truth, from the testimony in this case—not from conjecture, not from probability—to which cause will you refer it? That is for you.

Well, gentlemen, if the case is so doubtful to your minds that you cannot satisfactorily refer it to either cause, the plaintiff must fail, because he must prove what he alleges: That the company burned that cotton; and if he adduces evidence, which, in connection with the counter-testimony of the defendant, leaves your minds in such a condition that you cannot say, as honest men in search of the truth, to which cause to refer it—whether to that which the plaintiff alleges, or that which the defendant has brought to your attention by its testimony—then you cannot say, as honest men, that the company burned the cotton in consequence of the emission of sparks from its engine, and you will find for the defendant.

Of course, you are not obliged to be satisfied beyond a reasonable doubt, as counsel on both sides have told you. The rule in this court does not go to the same extent as in criminal cases, owing to the great tenderness of the law for the liberty and life of the accused. But yet the rule in this court is that evidence must amount to proof, whether it be circumstantial or positive; and if it does not amount to proof, the plaintiff must fail. If a man sues upon a note, and he cannot prove it, but can only

adduce testimony that raises a probability, he cannot recover. So, if he sues upon an open account and cannot prove it, but can only adduce circumstantial evidence that raises a probability that that account was contracted, he cannot recover. He must adduce satisfactory proof, so that the jury can say that the note was given, that the account was contracted, or, as in this case, that the cotton was burned in the manner alleged.

Suppose you come to the conclusion, from all the testimony, that that cotton was burned by a spark from the engine on that occasion, then you are but half through with the trouble; because then comes the question whether the spark from the engine that fired that cotton got there through the negligence of the employes of the company or not.

But just here, if you conclude that the spark burnt the cotton, then I hold that it devolves upon the defendant, the railroad company, to show that it was not occasioned by negligence. It throws upon the company the burden of proof that it did not occur through negligence. And when the company have introduced testimony to show that the privileges granted to them by the legislature were being exercised in a prudent and careful manner, that their engines were in good fix, with proper appliances for the suppression of sparks, so far as sparks can be suppressed, that they were running their trains in the usual way, and that the engines thus properly constructed in point of mechanism were managed with ordinary care and ordinary prudence, then it devolves upon the plaintiff to show that, notwithstanding that fact, there was some circumstance or some act of negligence on the part of the defendant which would render it liable.

What is the evidence of neglect? You have maps before you, one produced by each party, and I suppose there is not a great deal of difference between them, though I have not examined them with a great deal of scrutiny, because I have not thought it necessary, so far as I am concerned. But you will observe that the platform is close to the side track, so that a train can run up by the side of the platform and take in cotton. Now, gentlemen, that platform was erected by the town council, or at the special instance and request of the town council of

Gaffney City. That town council had determined that all cotton sold there should be weighed by a public weigher, and the platform was erected for the convenience of the town in having cotton weighed there so that they could get the revenue, and to have a convenient point from which it could then be shipped. But it was erected there by permission of the railroad company; and when it was put there, each one who left his cotton there understood, or should have understood, and is presumed by the law to have understood, exactly what his risk was. Here was cotton placed by various individuals upon a platform next to a railroad track upon which railroad trains were running, or engines passing, almost against that cotton many times a day; and the cotton was placed there with a full knowledge of the danger to that cotton from sparks from an engine.

In other words, those persons, whether compelled by the town council or not, have taken the risk upon themselves; the cotton is there exposed to sparks from engines of freight trains which pass near to it on that track, and from the engines of passenger trains which pass upon the main track, and the two tracks are very close together—those engines coming and going in both directions many times a day. Now, gentlemen, you must take that into consideration in this case. What, then, would prudence dictate on the part of these individuals? If that town council compelled persons who brought cotton to that platform to be weighed, and after being placed there it was burned by a spark from an engine without fault of its manager, but in the usual course of business—burned unavoidably, accidentally, from a spark—then common sense, common fairness and common justice would say to you that it would be an act of injustice to throw the loss upon the railroad company. I say that if it was burned there from a spark from an engine well constructed and prudently managed, and was burned simply because of its proximity to the railroad and without fault from the company, then it would be contrary to all sense of justice to make that company pay for it, and if fault is anywhere to be laid, it would be against those—whether the individuals themselves or the town council—who so arranged matters as to place the cotton in that position.

Prudence would have dictated that they should have had a watchman there, that they should have had the place properly policed. The evidence is that the town council did have the place policed; that they took charge of it, had cotton weighed there, and that parties who had it weighed there, left it there, and that notice was put up forbidding smoking, and all that; and prudence would have dictated that a watchman should be kept there also. Because, gentlemen, there is no evidence that that platform was under the charge of the railroad company, and not being under the charge of the company, they were not bound to put a watchman there over it, and they were not bound to exercise special police care over it; that devolved upon the owners, or the town council as the representative of the owners.

But if this prudence was not exercised by the parties who put the cotton there, if they were negligent, it nevertheless did not excuse the railroad company for negligence, because it was by the permission of the railroad company that the platform was erected and that cotton was put upon it. And whilst the railroad company was not bound to exercise any care or control over that cotton, except that which it had receipted for, yet it was not excused from exercising the proper care and prudence in the management of its road; and if by any defect in the construction of the company's engines, or any negligence or imprudence in the management of those engines, the cotton was burned, the company would be responsible, notwithstanding the absence of a watchman.

Now, the question is, Was there negligence? The company owned its franchise and property, and it was authorized to operate a railroad, with all its incidents; and having the responsibilities as well as the rights of a railroad company, it had a right to run its trains there as often as its business required. It had a right to run its engines along the side track as well as along the main track. Both tracks belonged to the company and they were built for its use, and the right to control those tracks could not be affected by putting that platform there. But they must be controlled as railroad tracks, the engines run as railroad engines; it is necessary that the engines should be well constructed and have their proper appliances for the suppression of sparks, and that

they should be run in the general course of business and carefully managed.

Now, where is the neglect? You will notice the distance between that platform and the main track on which the passenger trains run. The side track is up against the platform. How far the main track is from the side track I believe the testimony does not exactly show, except that they were close. On that main track the passenger engines were many of them running daily, and they had a right to run. How near were they to that cotton in thus running along that main track? It is said that this engine upon the side track went too near the cotton. Was there anything in the contract between the parties which inhibited a passenger train from running through that siding, close by that cotton, and coming out of the siding at the other end upon the main track? If there is nothing against it in the contract between the parties, the right to do so existed.

Then, was it prudent? Was it an act of negligence when the train took the side track, if it went a little beyond the clearing post? Was there anything in the charter of the railroad company, or in its usages, or was it an act of prudence that they should only go so far on the side track? Did the spark of fire, if it touched that cotton at all, come from the engine while it was on the side track, or when it was on the main track? If it was running along the main track, either coming in or going out, in doing so how far was it from the platform? and did the spark fall upon the cotton when it was starting or when it was in motion?

Now, gentlemen of the jury, if you can find from the testimony that in this particular case there was anything out of order in the engine, or that the engine was pushed up so close to the cotton that it was negligence thus to do, and that while thus negligently there, the cotton was fired—if those facts and circumstances are sufficiently proved, you might then refer the fire to negligence on the part of the company. But, gentlemen, if the spark set fire to the cotton in the usual and prudent management of those engines, in a way that could not be anticipated and could not be guarded against, the plaintiff cannot recover against the defendant.

You have heard the testimony of witnesses as to the position the engine on the side track took. Whether it went nearer to the cotton·than it was on the main track I do not know. Some say it went nearer; others say that it did not go so near, and that it took its usual position on the side track and run in far enough for the other train to pass safely. If that is the case, and everything was in usual good order, the ordinary precautions used in the construction of the engine and in its use on that occasion, why, though much cotton was lost, the railroad company is not responsible, and it can only be responsible if on that day its conduct satisfies you that it was negligent. And that, ·gentlemen, is a question of fact, under the explanation I have given you.

From the fact that there was a heavy loss to private individuals, you must not take it for granted that the defendant caused it, or that, if they caused it, it was the result of negligence, but you must act upon proof in this matter. If the proof satisfies you first, that it was caused by sparks, and that the sparks came not in an ordinary and natural way, but from negligent conduct of the engineer on that day, then you should find for the plaintiff, and not till then.

On behalf of the defendant I am requested to charge you:

I. "That the defendant is not liable unless the evidence shows negligence on the part of itself or its servants, and that the burden of proof is on the plaintiff to show such negligence." Not in that shape can I charge. I charge you as follows: It devolves on the plaintiff to prove that the fire was caused by the defendant. Having proved this fact, the burden is then cast on the defendant to prove the absence of negligence and the use of due care. The fact that the fire occurred from a spark from the engine is not proof of negligence, if the engines were well constructed, having improved safeguards, and were prudently managed. But this the defendant must prove.

II. "That the measure of the defendant's duty is the ordinary care of a prudent man in the management of his own personal property." I would not say that, because negligence and prudence and care are relative terms, and what might be prudence in the management of private property might not be in the case of a

railroad company. I say this is correct: That the measure of duty is the use of ordinary care by a well regulated railroad company in the conduct of its business.

III. "If it is probable that the fire originated from any cause other than the defendant's engines, the defendant is not liable." That is correct, with the insertion of the word "equally," so that it will read "If it is *equally* probable," &c.

IV. "That the defendant cannot be made liable on a mere probability that the fire was caused by its engine, but only on the preponderance of proof that it was so caused, and then only upon proof of negligence on the part of the defendant or its servants." That is correct; the probability must amount to proof.

V. "That if the jury believe from the evidence that the defendant corporation was provided with the most approved machinery for protection against fire, and that the said machinery was worked by careful and competent employes, they must find for the defendant." That is correct, provided the evidence is that the machinery was worked with reasonable care on that day.

VI. "That if the jury believe, from the evidence, that the defendant's engines were of the same construction and operated in the same manner on November 2d, 1879, the day of the fire, as at and prior to the time the cotton was placed on the platform, then the owners of the cotton took the general risk, and it was such contributory negligence on their part as defeats the plaintiff's right to recover." I do not charge in that shape. I say that: The owner of cotton on the platform took the risk arising from the usual and prudent running of the trains. Sparks are liable to be emitted from engines, and the risk of this liability from well-constructed and well-managed engines the plaintiff took.

VIII. "If the jury believe, from the evidence, that the town council of Gaffney City erected and controlled the cotton platform, and allowed persons to place cotton thereon, knowing its liability to destruction by fire, and did not take the necessary precaution to prevent it, this constitutes the intervention of an independent responsible agent, and the defendant is not liable." I would add to that, "except for negligent destruction of the cotton." The proposition would then be correct.

IX. " That when the owner of the cotton placed it on the town platform, in known proximity to passing trains, the duty was incumbent upon him to use due care for its protection, and the failure to do so would be negligence."

X. " That if the jury find that due care required a watchman for the protection of the cotton, it was incumbent upon the owners to provide one, and failure to do so was such negligence on their part as defeats the plaintiff's right to recover."

I shall charge this: The plaintiff should have taken steps of ordinary care to protect his cotton from ordinary danger. A watchman would have been a source of protection, but the want of a watchman over the cotton did not excuse the defendant for negligence. Sufficient proof of a negligent burning by defendant renders defendant liable, notwithstanding the fact that the plaintiff had no watchman.

First, you are to look to the fact: Did the defendant's engine burn that cotton? and before you can find for the plaintiff you must be satisfied, from the testimony on that point, that the engine did it. The evidence must not be merely enough to raise a suspicion, but it must produce satisfaction in your minds; and if you can account for the burning, under the testimony, upon any other hypothesis as well as the spark from the engine, then you cannot find for the plaintiff, because you must be satisfied that the allegation of the plaintiff, that it was burned by the spark, is true.

If you find that it was burned by a spark on that occasion, you still cannot find for the plaintiff unless it appears, from the testimony, that the defendant was negligent; and the first thing the defendant has to do, when the burning is proved to have come from its engine, is to prove the exercise of due care—that is, that the trains were running as the law allows, on a road chartered by the law; that they were running in the usual way; that the engines were in good fix, and used on that occasion with ordinary care and prudence. And, if that be the proof, then that negatives the idea of negligence, and the plaintiff must then resort to proof of positive facts and circumstances showing negligence. The plaintiff must show you, notwithstanding the engines were in good fix, and were running as the law allows, yet that the

defendant did something on that particular occasion which amounts to actual negligence, and caused the destruction of that cotton; and, without proof of that kind, the plaintiff cannot recover if the defendant has negatived the idea of negligence by proving that it had good engines, operated in the usual way.

You will then ask yourselves the question: If no cotton had been burned on that occasion would there have been any proof of any unusual conduct of the defendant at that time? You will also ask yourselves the question, whether or not the fact of the cotton being burned has not given rise to the efforts to prove a departure from the usual rule on that day? When the trains had come and gone that day, was there anything that had occurred which amounted, in the mind of anybody there, to an act of negligence? Were the acts of negligence the results of after-thought, or did they actually take place on that day? And, if the evidence shows that the usual mode of the coming and departure of trains occurred on that day, that everything was in good fix, and managed in the usual prudent way on that day, then, gentlemen of the jury, the plaintiff cannot recover.

But, if the evidence satisfies you of the defendant's negligence, and that the engine burned the cotton, you will find for the plaintiff, and you must find the value of the cotton and interest up to this day. If, however, you are not satisfied from the testimony that the defendant burned the cotton, or that it was done negligently, in either event you must find for the defendant; and let your verdict, gentlemen of the jury, be according to your honest convictions from the testimony. We may feel that these people ought to be paid for their cotton, yet, if it was burned through their own fault, or the fault of the town council, or, if it resulted from unavoidable or actual accident, it would not be right for the company to pay for it. But, if the company burned it through improper management of their business on that day, they ought to pay for it.

The jury found for the defendant, and the plaintiff appealed.

*Messrs. J. S. R. Thomson, Bobo & Carlisle,* for appellant.

*Messrs. D. R. Duncan, W. E. Earle,* contra.

March 13th, 1883.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This action was brought to recover damages for twelve bales of cotton burned at Gaffney City on November 2d, 1879.   The allegation was that the fire was produced by a spark from an engine of the defendant corporation, and the cotton consumed by their " careless, negligent and unskillful management."   The cotton had not been received by the company, nor had there been any order to ship it.   The owner had placed it on a platform, which, with the consent of the company, had been built adjacent to the side track of the railroad by the municipal authorities of the town of Gaffney, who retained control of it and established there public scales, which weighed all the cotton purchased at that point; but on the day of the fire there was no guard or watchman on duty to look after the cotton placed there.

At Gaffney, there is a side track of the defendant corporation near the main track, both running an easterly course from the direction of Spartanburg, the side track being north of the main track.   The platform was west of the depot, a few feet from the side track.   A street of the town crossed the railroad, and there was ample room for a train to stand on side track west of said street, the distance from clearing post to street being two hundred and eighty feet.   About three hundred and fifty bales of cotton were burned, part of it on the platform and part on the ground.   Some of this cotton had been receipted for by the company, and that they have paid for.

On the day the cotton was burned, the depot employes of the company were absent.   On that day two passenger trains stopped at Gaffney, as they were in the habit of doing.   The eastward bound train first came on the track, put out passengers, backed out and switched off on the side track.   The westward bound train then stopped for a few minutes and passed on.   The other train then backed, switched on to the main track, took on board the passengers and left for Charlotte.   For a month previous the weather had been very dry, and on the day of the fire there was a brisk wind blowing from the southwest to northeast. There was conflict of testimony as to the precise point to which the engine went on the side track, and as to the time which

elapsed after the train left, before the fire was discovered; and also as to the allegation that persons were on the cotton platform smoking cigars at the time the cars arrived. The defendant's witnesses testified that the engines were in good order and supplied with the most improved spark-arresters; and that the employes were careful and competent men, and acted with care and prudence that day.

After a full charge by the presiding judge, in which he carefully considered requests to charge by both parties, the jury found for the defendant, and the plaintiff appeals to this court, alleging that there was error in charging:

1. "That the fact that the fire occurred from a spark from the engine is not proof of negligence if the engines were well constructed—having improved safeguards, and were prudently managed.

2. "That the measure of defendant's duty is the ordinary care of a prudent man in the management of his own property.

3. "That if it is equally probable that the fire originated from any cause other than defendant's engine, the defendant is not liable.

4. "That defendant cannot be made liable on a mere probability that the fire was caused by its engines, but only on the preponderance of the proof that it was so caused, and then only upon proof of negligence on the part of defendant or its servants; and that the probability must amount to proof.

5. "That if the jury believe, from the evidence, that the defendant corporation was provided with the most approved machinery for protection against fire, and that said machinery was worked by careful and competent employes, they must find for the defendant.

6. "That the owner of cotton on the platform took the risk arising from usual and prudent running of the trains: Sparks are liable to be emitted from engines, and the risk of this liability, from well-constructed and well-managed engines, the plaintiff took.

7. "That if the jury believe, from the evidence, that the town council of Gaffney City erected and controlled the platform, and allowed persons to place cotton thereon, knowing the lia-

bility to destruction by fire, and did not take the necessary precaution to prevent it, this constitutes the intervention of an independent responsible agent, and the defendant is not liable, except for negligent destruction of the cotton.

8. " That the liability of defendants, as common carriers, did not arise in this case.

9. " That prudence would dictate that the town council of Gaffney should have a watchman in charge of the cotton placed at or near platform.

10. " In charging that the defendant had the right to run its engines along the side track as well as along the main track; that both tracks belonged to the company, and were built for its use; and the right to control these tracks could not be affected by putting that platform there.

11. " In charging that if there was nothing against it in the contract of the parties which inhibited it, the defendant had the right to run the passenger train through the side track close by the cotton, and come out on the main track at the other end of the siding.

12. " In charging that it required a great preponderance of testimony to establish the fact of burning the cotton by sparks from the engines."

There were, really, only two questions in this case: First. Whether the fire which consumed the cotton was caused by a spark from an engine of the company; and, if so, second, Whether that was an act of *negligence* for which the company should be held liable. The former was a pure question of fact for the jury; and the latter also, except in so far as it involved the necessity of defining what constitutes negligence. This was for the judge, and if he defined it correctly, as applying to the circumstances, then the whole case was for the jury. They found for the defendants, which must have been upon the ground, either that the fire did not proceed from the engine, or that there was no negligence; and in either case the verdict is conclusive upon us, unless there was some error of law in submitting the case to the jury.

We will consider together exceptions 1, 2, 5, 6, 8, 10 and 11, as to the rights, duties and liabilites of the railroad company in

relation to the cotton of the plaintiff. We cannot say that it was error in the judge to charge that the company was not liable for the cotton as a common carrier, and, therefore, bound to account for its value, if it was set on fire by a spark from one of the engines, whether that was done negligently or not. The plaintiff himself placed the cotton in proximity to the track without any agency of the company, and on a platform which did not belong to it. The company may not have known of the existence of this particular lot of cotton. They certainly had not, directly or indirectly, received it or come under any obligation to exercise special police care over it, or even to transport it. They stood to this cotton as to any other property placed by the owner near the track, and which did not belong to them. That is to say, they could not injure it willfully, wantonly or negligently; but, having the right, by charter of the State, to run upon their track locomotives propelled by steam, they were not responsible for the consequences which might result as an incident from such use of locomotives as would be inevitable accident, provided it appeared that such consequences had resulted notwithstanding the exercise of proper care and diligence; and the fact of the injury being proved, the *onus* was upon the company to disprove negligence, which they might do by showing that they had the most approved mechanical contrivances to prevent the escape of fire, and that on that day such engines were managed with due care and skill.

We think the charge of the judge was in accordance with the principles laid down by Mr. Pierce: "A railroad company, being authorized by law to work its engines in the usual and proper way, and, when necessary in the exercise of this right, to send forth particles of fire from them, is not liable for injuries caused thereby to private property; provided it exercises its rights in a lawful manner, and with reasonable care and skill. * * * The plaintiff must show that the fire originated from the company's engines. It is not sufficient to show a possibility that the injury was caused by the company. The proof that the company caused the fire may be circumstantial as well as direct. As negligence is the gist of the action against the company for injuries received from it while exercising its lawful right to con-

duct its trains, the burden of proof is on the plaintiff to prove the negligence. The fact of injury suffered by the plaintiff in consequence of the exercise of a right by the defendant, does not raise the presumption of negligence, except in some particular cases, as in actions against innkeepers and common carriers, which are made exceptions to the general rule on grounds of public policy. Hence, the setting on fire of grass, fences or buildings, on the railroad, by particles of fire, which are proved to have issued from the company's engines, does not, of itself, justify the inference of negligence. There are, however, authorities which hold that the fact that the company caused the injury by fire, raises the presumption of its negligence, and that, upon this fact appearing, the burden of proof is on the company to disprove negligence by showing that it used the best mechanical contrivances in known practical use to prevent the escape of fire from its engines, and that it managed such engines with due care and skill." *Pierce Railr. L.* 431, 437 and 438, and many authorities there cited; *McCready* v. *S. C. R. R. Co.*, 2 *Strobh.* 356.

We can see no difference in this respect between the use of the side track and that of the main road, subject, of course, to the same rule of proof as to negligence. Both belonged to the company, and both, built in the same right, had their proper uses connected with the running of the road. The platform, placed near the side track by the town authorities, did not impose on the company a measure of responsibility as to the use of that siding, other than that which existed as to the use of the main track. The plaintiff chose to put his cotton on the platform close to the side track, and, as the judge states, "When he placed it there he took the risk arising from the usual and prudent running of the trains."

Exceptions 7 and 9 complain that the judge charged: "That if the jury believe from the evidence that the town council of Gaffney City erected and controlled the cotton platform, and allowed persons to place cotton thereon, knowing its liability to destruction by fire, and did not take the necessary precautions to prevent it, this constitutes the intervention of an

independent responsible agent, and the defendant is not liable, except for negligent destruction of the cotton."

We do not see how this could prejudice the plaintiff. The defendants were liable for the cotton burned which they had receipted for, not on the ground of negligence, but as common carriers, and it was a matter for them to decide, with reference only to their own security, whether they would keep a guard there or not. They were not bound to do so, in order that, as an incident, the cotton of the plaintiff might also be protected. In the same connection in which he referred to the want of prudence on the part of others in having this cotton guarded, the judge said : "But, if this prudence was not exercised by the parties who put the cotton there, if they were negligent, it, nevertheless, did not excuse the railroad company from negligence, because it was by their permission that the platform was erected and the cotton put on it. And, whilst the railroad company was not bound to exercise any care or control over that cotton, except what it had receipted for, yet it was not excused from exercising the proper care and prudence in the management of its road ; and if, by any defect in the construction of the company's engines, or any negligence or imprudence in the management of their engines on that day, the cotton was burned, the company would be responsible, notwithstanding the absence of a watchman," &c.

Exceptions 3, 4 and 12, in different form, make the point that the judge erred in charging "that defendant cannot be made liable on a mere probability that the fire was caused by its engines, but only on the preponderance of proof that it was so caused, and then only upon proof of negligence on the part of the defendant or its servants, and that the probability must amount to proof." We have already disposed of the question of proof as to negligence. This part of the charge, in terms, had reference to the primary issue, whether the fire was caused by the engine of the company. That was purely a question of fact, as to which the *onus* was on the plaintiff. Was it error for the judge to say to the jury, in submitting that issue, that the allegation should be made out by " the preponderance of proof— that it was not sufficient if there was an equal probability that

the fire originated from some other cause; that the probability must amount to proof?"

It is contended that, in reference to the findings of facts by a jury, there is really no distinction between probability and proof, and that the charge led the jury to infer that positive, as distinguished from circumstantial, evidence was necessary. The whole charge shows, unmistakably, that such was not the meaning of the judge. He says: " The evidence must not be merely enough to raise a suspicion, but it must produce satisfaction in your minds, and, if you can, under the testimony, account for the burning upon any other hypothesis, as well as the spark from the engine, then you cannot find for the plaintiff, because you must be satisfied that the allegation of the plaintiff is true." And at another place he says: "Does the great preponderance of testimony satisfy your mind that sparks from the engine fired that cotton, or that it was fired by a spark, or coal, or a bit of burning tobacco from a pipe? Now, to which, as twelve men in honest search of truth, from the testimony in this case—not from conjecture, not from probability—to which cause will you refer it? That is for you."

It seems to us that there is a difference between probability and proof. The object of both words is to express a particular effect of evidence, but "proof" is the stronger expression. All the dictionaries give different definitions of "probability." One of Worcester is, "Likelihood of the occurrence of an event in the doctrine of chances, or the quotient obtained by dividing the number of favorable chances by the whole number of chances;" and one of Webster is, "Likelihood; appearance of truth; that state of a case or question of fact which results from superior evidence or preponderation of argument on one side, inclining the mind to receive it as the truth, but leaving some room to doubt. It therefore falls short of moral certainty, but produces what is called opinion. Demonstration produces certain knowledge, proof produces belief, and probability opinion." We think the case was fully, fairly and clearly submitted to the jury.

The judgment of this court is that the judgment of the Circuit Court be affirmed.